IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Robert E. Blackburn

Civil Case No. 07-cv-00673-REB-CBS

UNITED CONSTRUCTION PRODUCTS, INC.,

    Plaintiff,

v.

ETERNO IVICA s.r.l.,

    Defendant.

## ORDER CONSTRUING DISPUTED PATENT CLAIMS

**Blackburn, J.**

This matter is before me on the parties' *Markman* briefs seeking construction of certain disputed claim terms in the patent in suit. I heard oral argument on claim construction on January 13, 2009. I now construe the disputed claim terms of the patent in suit.

### I. JURISDICTION

I have jurisdiction over this patent infringement action under 28 U.S.C. § 1338(a).

### II. CLAIM CONSTRUCTION

Claim construction is a matter of law for the court. *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 384-91, 116 S.Ct. 1384, 1393-96,134 L.Ed.2d 577 (1996). "The construction of claims is simply a way of elaborating the normally terse claim language in order to understand and explain, but not to change, the scope of the claims." *Embrex, Inc. v. Service Engineering Corp.*, 216 F.3d 1343, 1347 (Fed. Cir. 2000) (citation and internal quotation marks omitted). Claims construction proceeds

along a well-defined, hierarchical path, beginning with the claim language itself, proceeding to the other intrinsic evidence of record, including the specification and prosecution history, and finally to consideration of any extrinsic evidence, such as expert testimony.[1]  **See Vitronics Corp. v. Conceptronic, Inc.**, 90 F.3d 1576, 1582 (Fed. Cir. 1996)

"It is a bedrock principle of patent law that the claims of a patent define the invention to which the patentee is entitled the right to exclude." **Phillips v. AWH Corp.**, 415 F.3d 1303, 1312 (Fed. Cir. 2005), **cert. denied**, 126 S.Ct. 1332 (2006) (citation and internal quotation marks omitted).  There is a "heavy presumption" that claim terms carry the ordinary and customary meaning that would be given to them by one skilled in the relevant art.  **Texas Digital Systems, Inc. v. Telegenix, Inc.**, 308 F.3d 1193, 1202 (Fed. Cir. 2002), **cert. denied**, 123 S.Ct. 2230 (2003).  "The construction that stays true to the claim language and most naturally aligns with the patent's description of the invention will be, in the end, the correct construction." **Phillips**, 415 F.3d at 1316 (citation and internal quotation marks omitted).

Of equal importance in construing the claims is the specification "of which [the claims] are a part." **Id.** at 1315 (citation and internal quotation marks omitted).  The specification "is the single best guide to the meaning of a disputed term." **Vitronics Corp.**, 90 F.3d at 1582.  Thus, when the specification explicitly defines a term used in the claims of the patent, that definition will be controlling.  **Renishaw PLC v. Marposs Societa' per Azioni**, 158 F.3d 1243, 1248 (Fed. Cir. 1998).  In addition, if the specification contains an express disclaimer as to the scope of the claims, "th[e] court

---

[1] The parties have not presented extrinsic evidence in support of their competing constructions, but instead rely entirely on the claim language, the specification, and the prosecution history.

interprets the claim more narrowly than it otherwise would to give effect to the inventor's intent to disavow a broader claim scope." *Ventana Medical Systems, Inc. v. Biogenex Laboratories, Inc.*, 473 F.3d 1173, 1181 (Fed. Cir. 2006). Absent either of these circumstances, the court may not read a limitation into a claim based on the specification. *Renishaw PLC*, 158 F.3d at 1248.

### III. ANALYSIS

At issue in this lawsuit is plaintiff's patent for a "Method and Apparatus for Supporting Building Surface," United States Patent No. 5,588,264 (the "'264 Patent"). The device described in the patent is designed to support and level elevated building surfaces, such as decks, terraces, and other like structures. The device is adjustable to allow for a range of elevations such that a level deck can be built over an uneven fixed surface.

The parties have had difficulty in agreeing on what claim terms, if any, are properly subject to construction. Plaintiff's tautological insistence that no claim construction is necessary at all because the words used in the patent are clear and unequivocal is unhelpful. Terms of the patent may have clear and commonly understood meanings, but it first must be decided whether those are the meanings the inventor intended to claim:

> Claims cannot be clear and unambiguous on their face. A comparison must exist. The lucidity of a claim is determined in light of what ideas it is trying to convey. Only by knowing the idea, can one decide how much shadow encumbers the reality.
>
> The very nature of words would make a clear and unambiguous claim a rare occurrence. Writing on statutory interpretation, Justice Frankfurter commented on the inexactitude of words:

3

> They are symbols of meaning. But unlike
> mathematical symbols, the phrasing of a
> document, especially a complicated
> enactment, seldom attains more than
> approximate precision. If individual words are
> inexact symbols, with shifting variables, their
> configuration can hardly achieve invariant
> meaning or assured definiteness.
>
> . . . . Things are not made for the sake of words, but words
> for things.

***Autogiro Co. of America v. United States***, 384 F.2d 391, 396-97 (Ct. Cl. 1967) (citation omitted). In other words, context matters. "Thus . . . a claim cannot be interpreted without going beyond the claim itself. No matter how clear a claim appears to be, lurking in the background are documents that may completely disrupt initial views on its meaning." ***Id.*** at 397.

For its part, defendant has wavered as to the terms in dispute and its proposed definition of those terms. However, at the hearing, defendant identified two principal, overarching construction issues involving five discrete terms and phrases.[2] Specifically, in claim 1, the following highlighted terms and phrases require construction:

> What is claimed is:
>
> 1. An apparatus for elevating a building surface above a fixed surface, comprising: . . . ;
>
> a **support member** having an inlet and including **means for engaging** the building surface, said **support member** being rotatably engaged with said body portion along said length thereof **wherein rotation of said base member relative to said support member** elevates said engaging means, . . . .

(U.S. Patent No. 5,588,264 at 7:51-53 & 60-65 & 8:7-14.) Also, in dependent claims 4 and 5, the parties dispute the following terms and phrases:

---

[2] A sixth term that defendant identified, "support surface," is actually not part of the claim language itself, but rather used in the specification to describe an aspect of the support member.

4

> The apparatus as claimed in claim 1, wherein:
>
> at least one of said support member and said base member includes **means for indicating** the maximum extension of said support member above said base member, said **means for indicating** including an **indicator slot** and said **indicator slot** extending for a predetermined number of threads located on said one of said support and base members and with said **indicator slot** being movable when said base member rotates relative to said support member.

(8:39-48.)

I have considered the intrinsic evidence and briefs submitted by the parties, as well as the oral arguments presented at the *Markman* hearing. Having considered this evidence, the parties' arguments, and the applicable law, I find and conclude as follows.

The pedestal device that is the subject of the patent in suit is comprised of a base member and a support member. The base member is an open cylindrical bore that sits on the fixed surface above which the "building surface," i.e., the platform or decking, will be raised. The support member is a threaded cylindrical projection that can be screwed into the base member so as to join the two pieces together. It also must include a "means for engaging" the building surface. The demonstrative units both parties presented at the hearing have a single, one-piece support member. The crucial question is whether the patent *requires* that the support member be a single unit.[3]

The plain language of claim 1 itself does not specifically require that the support member be a single, one-piece unit. However, because the patent uses "means-plus-

---

[3] Defendant's accused product includes a two-piece support member in which the piece comprising the support surface is not attached to the piece comprising the cylindrical projection of the support member.

5

function" language to describe the support member, i.e., that it includes a "means for engaging the building surface," *see Welker Bearing Co. v. PHD, Inc.*, – F.3d –, 2008 WL 5205639 at *4 (Fed. Cir. Dec. 15, 2008) (use of the words "means" in a claim limitation creates presumption that means-plus-function doctrine of 35 U.S.C. § 112 applies),[4] the claim is limited "to the structure, material, or acts described in the specification and equivalents thereof," 35 U.S.C. § 112. Corresponding structure may be found in the specification and any drawings contained therein, as well as in the abstract. *Playtex Products, Inc. v. Procter & Gamble Co.*, 400 F.3d 901, 909 (Fed. Cir. 2005).

The specification in its description of the support member does not limit the composition of such support member to a single, one-piece unit.[5] It provides merely that the support member has a "support surface to attach or engage the building surface." (2:7-8; *see also* 2: 41-42, 4:56). Correspondingly, as described by the claim itself, the function to be performed by the support member is that of "engaging the

---

[4] The parties do not dispute that this language invokes a means-plus-function limitation in the patent. *See Welker Bearing Co.*, 2008 WL 5205639 at *3 ("'The task of determining whether the limitation in question should be regarded as a means-plus-function limitation, like all claim construction issues, is a question of law.'") (quoting *Lighting World, Inc. v. Birchwood Lighting, Inc.*, 382 F.3d 1354, 1358 (Fed. Cir.2004)).

[5] For example, Figures 7 and 8 of the patent show side and top views of the support member, respectively. (3:52-55.) Although Figure 7 appears to show a support member that comprises a solitary unit, the drawing is somewhat ambiguous in this regard. Describing these figures, the specification provides that although "[t]he support surface can be any shape, such as circular and rectangular" (5:17-20), it must "include[] attachment holes for attaching the support surface to the building surface" (5:11-13) and "[t]he cross-sectional area of the support surface is no less than about 24 inch[es] to provide a stable surface for the load" (5:43-45). Other language in the specification is unilluminating on this point. (*See, e.g.*, 6:24-32 (noting that the support member is preferably made of "material [that] is chemically inert and resistant to fluids . . . [such as] synthetic plastics," which "provide the added benefit that a building surface can be mechanically fastened or screwed into the material and thereby fastened to the support surface of the support member" ); 2:57-59 (providing that "[t]he support surface is substantially planar to inhibit the collection of fluids on the surface").

6

building surface."  The verb "to engage," as used in this context, is defined[6] as "11.c.
*Mech*. . . . [t]o interlock with, fit into a corresponding part."  **Oxford English Dictionary**
(***available at*** http://dictionary.oed.com/cgi/entry/50075292?query_type=word&
queryword=engage&first=1&max_to_show=10&sort_type=alpha&result_place=3&search_id=Vuqy-MNHEiW-10292&hilite=50075292).  Thus, the support surface must
perform the function of fitting into or interlocking with the building surface.

In addition, claim 1 further requires that the support member must be "rotatably
engaged with said body portion along said length thereof wherein rotation of said base
member relative to said support member elevates said engaging means."  I agree with
defendant that the language of the patent, both the claim itself and the specification, as
well as the prosecution history and consideration of the inventor's attempt to distinguish
the prior art, amply support the conclusion that it is the base member, not the support
member, that is rotated in order to elevate the apparatus, rather than plaintiff's
argument that the base and support members need only rotate relative to one another.
(***See*** 2:8-11, 2:46-48, 3:7-8, 3:14-15, 3: 22-23, 4:29-31, 7:13-18, 7:41-42; ***see also***
Def. Br. App., Exh. B at 92-93.)  Moreover, the claim requires that the rotation of the
base member must achieve the task of elevating the support member by virtue of the
"engaging means," i.e., the threaded engagement between the cylindrical projection of
the support member and the cylindrical bore of the base member.  If the support
surface is not attached to the support member in some way, rotation of the base
member will not necessarily achieve this function – the base member and support
member can or will spin as a unit around the unattached support surface without

---

[6] "[D]ictionaries, encyclopedias and treatises are particularly useful resources to assist the court in determining the ordinary and customary meanings of claim terms."  ***Texas Digital Systems, Inc. v. Telegenix, Inc.***, 308 F.3d 1193, 1202 (Fed. Cir. 2002).

actually elevating the support member.

For this reason, I find and conclude that although the support member does not need to be a one-piece unit, it must at the very least include a support surface that is attached or affixed in some manner to the support member.

The other disputed terms of the patent, arising in claims 4 and 5, implicate the requirement that "at least one of said support member and said base member includes means for indicating the maximum extension" of the device, which means "includ[e] an indicator slot." Again, neither party disputes that the claim is framed in means-plus-function language, and, thus, is limited to the structures disclosed in the specification and their equivalents. Although the claim purports to assert that indicator slots are "included" as one of several possible means for achieving the desired function of indicating maximum extension, the specification discloses only a visible indicator notch. (5:46-50 & 56-57.) Likewise, the only structures disclosed in the drawings, Figures 4, 7, and 10, all include a visible notch in the bottom portion of the cylindrical projection of the support member. Therefore, I find and conclude that the means for indicating must be a notch that is or becomes visible to the user as the device is being extended.

**THEREFORE IT IS ORDERED** as follows:

1. That the disputed terms in claim 1 of the '264 patent are construed as follows:

> a ***support member*** comprised of a threaded cylindrical projection having an inlet and including a ***means for engaging*** the building surface ***comprised of a support surface that is attached or affixed to the threaded cylindrical projection***, said support member being rotatably engaged with said body portion along said length thereof wherein

*rotation of said base member relative to said support member while the support member is held stationary* elevates said engaging means; and

2. That the disputed terms in claims 4 and 5 of the '264 patent are construed as follows:

The apparatus as claimed in claim 1, wherein:

the support member includes *means for indicating* the maximum extension of said support member by means of a *visible indicator slot* extending for a predetermined number of threads located on said support member and with said visible indicator slot being movable when said base member rotates relative to said support member.

Dated January 26, 2009, at Denver, Colorado.

**BY THE COURT:**

Bob Blackburn
Robert E. Blackburn
United States District Judge